UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MIR S. IQBAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:12 CV 56 |
| | ) |
| TEJASKUMAR M. PATEL, WARREN JOHNSON, S-MART PETROLEUM, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| WARREN JOHNSON, S-MART PETROLEUM, INC., | ) |
| | ) |
| Counter Claimants, | ) |
| | ) |
| v. | ) |
| | ) |
| MIR S. IQBAL, | ) |
| | ) |
| Counter Defendant | ) |

## OPINION AND ORDER

This matter is before the court on defendants Warren Johnson and S-Mart Petroleum ("defendants") Inc.'s motion for summary judgment. (DE # 23.) On December 27, 2013, the court issued an order explaining that it believed it did not have jurisdiction over plaintiff's claims under the *Rooker-Feldman* doctrine. (DE # 39.) The court gave the parties 30 days to file a response to that order, and both plaintiff and defendants filed briefs in response. (DE ## 40, 41.)

The court summarized the facts of this case in its previous order as follows:

Plaintiff Mir Iqbal ("Iqbal") was a partner in S-M-1 Acquisition Corp ("S-M-1"). (DE # 23 at 3.) In March of 2007, Iqbal was approached by defendant Warren Johnson, the president of S-Mart Petroleum ("S-Mart"), and Johnson's real estate broker, S.P Singh, who recommended that Iqbal purchase a gas station in Lafayette, Indiana ("the gas station"). (DE # 1 at 3.) Through his company, S-M-1, Iqbal purchased the gas station. (*Id.*) S-M-1 then entered into a Motor Fuel Sales Agreement with S-Mart. (*Id.*) In the agreement, S-M-1 agreed to purchase at least 120,000 gallons of motor fuel per month from S-Mart from April 1, 2007 until March 31, 2013. (DE # 23 at 3.) Iqbal and Ali Ahmed[1] signed a personal guaranty in connection with the Motor Fuel Sales Agreement. (*Id.* at 4.)

Iqbal, who lived in Illinois at the time that he purchased the gas station, had no intention of running the gas station himself. (DE # 1 at 3.) Around the time that Iqbal purchased the gas station, defendant Johnson and Singh introduced Iqbal to Tejaskumar Patel. (*Id.*) After being introduced to Patel, Iqbal and Patel entered into an agreement whereby Patel would have complete operational and financial control over the gas station. (*Id.*) After Patel began running the gas station and the gas station had received gas from S-Mart, S-M-1 failed to pay for the gas as set out in the Motor Fuel Sales Agreement. (DE # 23 at 4.) Johnson allowed Patel to skip gas payments for five consecutive weeks, but Iqbal had no knowledge of this practice until after the five-week period was over. (DE # 1 at 4.) At that point, Patel left his position at the gas station, and Johnson stopped delivering the gas. (*Id.*)

By October 1, 2008, the unpaid amount owed on the gas totaled $67,829.58. (DE # 23 at 4.) S-Mart eventually filed suit against S-M-1, Iqbal, and Ali Ahmed in Indiana state court to recover the money it was owed under the Motor Fuels Sales Agreement. (*Id.*) On April 14, 2009, the Tippecanoe Superior Court, entered summary judgment in favor of S-Mart. (*Id.*; *see also* DE # 23-5.) On October 1, 2009, S-Mart entered into a settlement agreement with Iqbal, S-M-1, and Ali Ahmed to settle the judgment from the Tippecanoe Superior Court. (DE # 23 at 4; *see also* DE # 23-1 at 18-19.) Pursuant to the settlement agreement, Iqbal, M&U, LLC,[2] and SGTC II, Inc.[3] executed a promissory note payable to S-Mart in the amount of $75,000.00.

---

[1] Ahmed was also a partner in S-M-1. (DE # 23-2 at 1.)

[2] Iqbal is the sole member and sole manager of M&U, LLC. (DE # 23 at 6.)

[3] Iqbal is the president and majority shareholder of SGTC II, Inc.. (DE # 24 at 2-3.)

(DE # 23-4 at 5; DE # 23-1 at 18-19.) Additionally, SGTC, II, Inc. entered into a new Motor Fuel Sales Agreement with S-Mart. (DE # 23 at 5; DE # 23-1 at 18-19.)

On August 25, 2009, M&U, LLC purchased the gas station and real estate that S-M-1 had owned.[4] (DE # 23 at 6.) M&U, LLC executed a mortgage in favor of S-Mart on October 1, 2009. (*Id.*) The mortgage granted S-Mart a first mortgage lien on the gas station located at the Lafayette property M&U, LLC had purchased. (*Id.*; DE # 23-2 at 37-49.) S-Mart eventually filed suit against Iqbal, M&U, LLC, and SGTC II, Inc. in Tippecanoe Superior Court to enforce the settlement agreement, collect on the promissory note, foreclose the mortgage, and collect damages for breach of the second Motor Fuel Sales Agreement. (DE # 23 at 7; DE # 23-6 at 1.) On June 28, 2010, the Tippecanoe Superior Court entered summary judgment in favor of S-Mart and against Iqbal, M&U, LLC, and SGTC II, Inc.. (DE # 23 at 7.) That summary judgment order included an order of foreclosure on the gas station. (DE # 23-8 at 4.) On October 6, 2010, M&U, LLC filed for bankruptcy. (*Id.* at 8.) On December 1, 2011, the bankruptcy court approved an agreement between M&U, LLC and S-Mart to lift the automatic bankruptcy stay on the gas station. (*Id.*; *see also* DE # 23-11.) On March 7, 2012, a Sheriff's sale was held and the gas station was sold to Big Boom, Inc..[5] (DE # 23 at 9.)

In January 2012, Iqbal learned from J.P. Singh that defendants Patel and Johnson were doing business together at several other gas stations throughout Indiana. (DE # 35-1.) Up until that point, Iqbal was unaware that Johnson and Patel knew each other.[6] (*Id.*) Iqbal learned from Singh that

---

[4] This purchase was made through a Sheriff's sale. (DE # 23 at 6.) Neither party addresses this issue, but it appears that the gas station and property were foreclosed on by the Bank of Indiana prior to the sheriff's sale. (DE # 23-1 at 34-35.)

[5] In his complaint, plaintiff alleges that defendant Johnson took over the gas station through the foreclosure process (DE # 1 at 4.) Therefore, despite none of the parties addressing this issue, the court will assume that defendant Johnson is in some way associated with Big Boom Inc..

[6] In his verified complaint, plaintiff states that defendant Johnson introduced plaintiff to defendant Patel. (DE # 1 at 3.) In plaintiff's affidavit, however, plaintiff states that he "was unaware of the relationship Defendant Johnson had with [his] partner/employee, Defendant Patel." (DE # 35-1 at 1.) The court originally construed this as plaintiff indicating he did not know that Johnson and Patel knew each other.

> Johnson and Patel had been working together with the goal of running Iqbal's gas station into the ground, so Johnson could foreclose on the property. (*Id.*) After learning this information, Iqbal filed the present suit, alleging Civil Rico violations, fraud, and unjust enrichment. (DE # 1.) Defendants Johnson and S-Mart have now moved for summary judgment on all of Iqbal's claims.[7] (DE # 23.)

(DE # 39 at 2-5.)

In its previous analysis, the court explained why it believed the *Rooker-Feldman* doctrine applied to divest this court of jurisdiction over plaintiff's claims. (*Id.* at 5-16.) In response, defendants agree with the court's analysis (DE # 40), and plaintiff disagrees with the analysis (DE # 41). Plaintiff makes several arguments as to why he believes *Rooker-Feldman* is not applicable to this case, and the court will address each in turn.

First, plaintiff argues that:

*Rooker-Feldman* does not prevent the lower federal courts from reviewing state-court judgments that were allegedly procured through fraud. In other words, when a "state-court loser" complains that the winner owes his triumph not to sound legal principles—or even unsound ones—but to fraud, then the loser is not really complaining of an injury caused by a state-court judgment, but of an injury caused by the winner's chicanery.

(DE # 41 at 3.) In support of this argument, plaintiff points out that the Third, Sixth, and Ninth Circuit Courts of Appeals have carved out fraud exceptions to the *Rooker-*

---

After reading these documents again, plaintiff might be indicating a lack of knowledge about the alleged fraudulent relationship between those defendants, and not indicating that he was unaware that these two defendants knew each other. Regardless of which scenario is true, this distinction has no bearing on the outcome in this case.

[7] The third defendant in this case, Tejaskumar Patel, did not move for summary judgment. As the court noted previously, however, the analysis set out in its December 27, 2013 order applies equally to defendant Patel. (DE # 39 at 5 n.6.)

4

*Feldman* doctrine. (*Id.* at 3-7); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140-42 (9th Cir. 2012); *Pondexter v. Allegheny Cnty. Hous. Auth.*, 329 F. App'x 347, 350 (3d Cir. 2009) *In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986).

Thus, plaintiff is arguing that the court should adopt what at least one court has called a "fraudulent procurement" exception to the *Rooker-Feldman* doctrine. *Anctil v. Ally Financial, Inc.*, No. 12–CV–8572, 2014 WL 516686, at *6 (S.D. N.Y. Feb. 10, 2014). The Courts of Appeals are split on recognizing this exception:

> The Courts of Appeals are currently divided on the question of whether a fraudulent procurement exception to *Rooker–Feldman* exists. *Compare Int'l Christian Music Ministry Inc. v. Ocwen Fed. Bank, FSB,* 289 F. App'x 63, 65 (6th Cir. 2008) (unpublished) (recognizing exception) *and Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (recognizing exception for allegations of "extrinsic" fraud only) *with Smalley v. Shapiro & Burson, LLP,* 526 F. App'x 231 (4th Cir. 2013) (unpublished) (no such exception exists) *and Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031 (8th Cir. 1999) (same). Some courts, such as the Third Circuit, have reached different conclusions in different cases. *Compare Pondexter v. Allegheny Cnty. Hous. Auth.,* 329 F. App'x 347, 350 (3d Cir. 2009) (unpublished) ("[Plaintiff] alleges that [Defendant] committed fraud in the state courts by misleading the court regarding the amount of rent he owed. As this claim does not allege harm caused by a state court judgment, but instead challenges the manner in which the state court judgment was procured, *Rooker–Feldman* does not apply.") *with Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream,* 317 F. App'x 263, 266 (3d Cir. 2009) (unpublished) (ordering dismissal, under *Rooker–Feldman,* of RICO claims alleging conspiracy to fraudulently obtain state court divorce judgment).

*Id.*

Despite this circuit split, this court must follow the precedent of the Seventh Circuit. And, as best the court can tell, the Seventh Circuit appears to side with 4th and 8th Circuits on this issue, which do not recognize the exception. *See, e.g.*, *Nora v. Residential Funding Co., LLC*, 543 F. App'x 601, 602 (7th Cir. 2013) ("[The plaintiff's]

5

allegations of fraud and conspiracy fit the mold of the general rule and are therefore barred. By alleging that the fraudulent assignment to [the mortgage company] allowed it to succeed in foreclosing on her property in state court, [plaintiff] is impermissibly asking a federal district court to review and reject the state court's judgment of foreclosure of her property. [Plaintiff] replies that she is seeking damages under federal statutes, not just the return of her home. But a request for review of a state-court foreclosure decision that includes a claim for damages based on charges of defrauding the state court does not elude *Rooker–Feldman*."); *Sheikhani v. Wells Fargo Bank*, 526 F. App'x 705, 706-07 (7th Cir. 2013) (*Rooker-Feldman* barred claim that state court foreclosure judgment was obtained through fraudulent assignment of mortgage because the injury plaintiff complained about – the loss of the house – "flow[ed] from the foreclosure judgment itself. . . . *The district court's dismissal thus was proper regardless of any fraud [defendant] may have committed."* (emphasis added)); *Ross-West v. Bank of New York Mellon Corp.*, 523 F. App'x 395, 395-96 (7th Cir. 2013) (*Rooker-Feldman* barred claim that state court foreclosure judgment was obtained through fraudulent assignment because "[n]o matter how the [plaintiffs] frame their complaint, the district court could not grant the requested relief—a judgment declaring them to be the rightful owners of the home—without disturbing the state court's foreclosure judgment."); *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204 (7th Cir. 2011) (Plaintiff's allegations that bank that foreclosed on his property had engaged in an unlawful conspiracy to obtain plaintiff's property barred by *Rooker-Feldman* because a plaintiff "cannot circumvent the *Rooker-*

*Feldman* doctrine by recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations."); *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008) (plaintiff's claims that defendants improperly obtained attorneys' fees through fraud barred by *Rooker–Feldman* because in order to "capitalize on the alleged fraud," the defendants "needed to prevail in state court," which would "ultimately require [the federal court] to evaluate the state court judgments").

In the case at hand, plaintiff is seeking possession of foreclosed property and damages, alleging fraud and conspiracy by defendants in order to obtain that property through the foreclosure process. Numerous Seventh Circuit cases have concluded that *Rooker-Feldman* applies in factually similar circumstances. *See, e.g.*, *Nora*, 543 F. App'x at 602 (7th Cir. 2013); *Sheikhani*, 526 F. App'x at 706-07; *Ross-West*, 523 F. App'x at 395-96; *Wallis*, 443 F. App'x at 204; *Stanley v. Hollingsworth*, 307 F. App'x 6, 9 (7th Cir. 2009) ("[The plaintiff's] malicious-prosecution claim, and his other claims of misconduct during the state-court proceedings, ask the federal district court to rule that the state court erred in its foreclosure judgment because of the misconduct of his litigation adversaries. *Rooker–Feldman* prohibits the district court from so doing."); *Kelley*, 548 F.3d at 605 (plaintiff's claims that defendants improperly obtained attorneys' fees through fraud barred by *Rooker–Feldman* because in order to "capitalize on the alleged fraud," the defendants "needed to prevail in state court," which would "ultimately require [the federal court] to evaluate the state court judgments"); *Crestview Vill. Apartments v.*

*United States Dep't Hous. & Urban Dev.*, 383 F.3d 552, 556 (7th Cir. 2004) ("A finding by the district court that defendants did, as [the plaintiff] alleges, conspire to bring unsubstantiated lawsuits would undermine the state court's implicit holding that the state action was justified."); *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 558 (7th Cir. 1999) ("[W]hile [the plaintiff] complains that the defendants deprived her of her property without due process in initiating and pursuing the eviction action, the injuries she alleges were complete only when the Circuit Court entered the eviction order against her. Absent the eviction order, [the plaintiff] would not have suffered the injuries for which she now seeks to be compensated.").[8]

Therefore, the court declines to adopt a fraudulent procurement exception to the *Rooker-Feldman* doctrine in this case because, as the court explained in its previous order, plaintiff's claims are inextricably intertwined with the state court judgment. Plaintiff's arguments on this issue therefore fail.

Plaintiff next argues that *Rooker-Feldman* does not apply in this case because the state court judgment was "properly obtained," and argues that his claims in this case are independent of the state court judgment. (DE # 41 at 10.) Despite this argument, plaintiff does not contest that his alleged injury – the loss of his business and his investment – was only complete when the state court issued its judgment of foreclosure.

---

[8] Plaintiff argues that in *Taylor v. Federal National Mortgage Association*, 374 F.3d 529 (7th Cir. 2004), the Seventh Circuit stated that fraud was an exception to *Rooker-Feldman*. (DE # 41 at 9.) Plaintiff, however, does not identify the language of the *Taylor* opinion that plaintiff bases this argument on, and the court is unable to identify it itself. This argument is therefore not persuasive.

(*See* DE # 39 at 9-11); *see also Long,* 182 F.3d at 556 ("For if the proceedings in the [state court] resulted in her favor . . . , it seems unlikely that she would have been evicted or lost all of her possessions, custody of her daughter, and her job. In essence, she would not have been deprived of her property as she complains."); *Garry v. Geils*, 82 F.3d 1362, 1368 (7th Cir. 1996) ("While the plaintiffs complain that the defendants moved the proposed ditch location as an act of political retaliation against them, the injury alleged was only complete when the state court actually condemned the property. Thus plaintiffs are basically claiming injury at the hands of the state court."); *Ritter v. Ross,* 992 F.2d 750, 754 (7th Cir. 1993) (*Rooker-Feldman* applied because "but for the . . . foreclosure judgment in [state court] [the plaintiffs] would have no complaint; they would still have their land and would have suffered no injury."). Therefore, plaintiff's claims are inextricably intertwined with the state court judgment, and plaintiff's arguments on this point fail.

Plaintiff also argues that he did not have a reasonable opportunity to raise his claims in the state court cases. (DE # 41 at 11.) First, plaintiff argues that he did not have an opportunity to raise the claims in state court because he was not aware of the alleged fraud to deprive him of his property until after the state court action was finished. (*Id.*) As the court explained in its previous order, however, "[a] plaintiff lacks a reasonable opportunity to raise a claim only if state court procedures have erected an impenetrable barrier that 'litigants are incapable of overcoming in order to present certain claims to the state court.'" *Hochstetler v. Fed. Home Loan Mortg. Corp.,* No. 3:12–cv–772, 2013 WL

3756502, at *3 (N. D. Ind. July 16, 2013) (quoting *Long*, 182 F.3d at 558). A plaintiff cannot "rely on the deception of her opponents to demonstrate that she was not afforded a reasonable opportunity to raise her [claims]" in state court. *Long*, 182 F.3d at 559; *see also Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007) ("In deciding whether [a plaintiff] lacked a reasonable opportunity to present its claims in state court, we focus on difficulties caused not by opposing parties, but by state-court rules or procedures."). Plaintiff does not advance any argument that a state court rule or procedure prevented him from bringing his claims, and plaintiff's argument on this point fails.

Plaintiff also argues that he did not have a reasonable opportunity to raise his claims because defendant Patel was not a party to the state court actions. (DE # 42 at 11.) Plaintiff does not cite any authority to support his position, and the only case the court could find indicates that Patel's absence from the state court case does not preclude application of the *Rooker-Feldman* doctrine as long as plaintiff's claims against Patel are inextricably intertwined with the state court judgment. *See Lambeth v. Miller*, 363 F. App'x 565, 568-69 (10th Cir. 2010) ("[*Lance v. Dennis,* 546 U.S. 459 (2006)] held that *Rooker – Feldman* cannot be invoked *against a plaintiff* who was not a party to the underlying state-court action, but it did not purport to limit the invocation of *Rooker – Feldman by a defendant* in a federal proceeding who was not a party in the prior state-court litigation against a plaintiff who was – provided, of course, that the claims raised in federal court are inextricably intertwined with the prior state court proceeding."

10

(emphasis in original)); *see also Tal v. Hogan*, 453 F.3d 1244, 1257 (10th Cir. 2006) (noting that a state court loser's "addition of new defendants in federal court also does not change the nature of the underlying state court ruling[.]"). Plaintiff's claims against Patel are inextricably intertwined with the state court case.[9] And, as defendants correctly point out in their reply brief (DE # 40 at 5-6), the Indiana Rules of Trial Procedure allow a party to bring claims against third parties. *See* Indiana Rule of Trial Procedure 14. Plaintiff's argument on this point therefore fails.

In sum, after reviewing the arguments by the parties in their respective briefs, the court still finds that the analysis set out in its December 27, 2013 order (DE # 39) is correct. Therefore, pursuant to that order and the analysis contained above, the court will dismiss plaintiff's claims for lack of jurisdiction. Defendants Johnson and S-Mart have also filed a counterclaim against Iqbal. These defendants, however, state that they have no objection to this claim being dismissed without prejudice if the court concludes that it lacks jurisdiction over plaintiff's claims. (DE # 40 at 7-8.)

---

[9] The injury that plaintiff claims Patel is responsible for – the loss of his business and investment – was only complete when the state court entered judgment. *Long,* 182 F.3d at 556 ("For if the proceedings in the [state court] resulted in her favor . . . , it seems unlikely that she would have been evicted or lost all of her possessions, custody of her daughter, and her job. In essence, she would not have been deprived of her property as she complains."); *Geils*, 82 F.3d at 1368 ("While the plaintiffs complain that the defendants moved the proposed ditch location as an act of political retaliation against them, the injury alleged was only complete when the state court actually condemned the property. Thus plaintiffs are basically claiming injury at the hands of the state court."); *Ritter,* 992 F.2d at 754 (*Rooker-Feldman* applied because "but for the . . . foreclosure judgment in [state court] [the plaintiffs] would have no complaint; they would still have their land and would have suffered no injury.").

Therefore, the Clerk is directed to dismiss this case. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. *See Frederiksen v. City of Lockport,* 384 F.3d 437, 438 (7th Cir. 2004) ("The *Rooker–Feldman* doctrine is a rule of federal jurisdiction. A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render." (emphasis in original)). Defendants' counterclaim is also **DISMISSED WITHOUT PREJUDICE**.

                                      **SO ORDERED.**

Date: March 27, 2014

                                      s/James T. Moody
                                      JUDGE JAMES T. MOODY
                                      UNITED STATES DISTRICT COURT