UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MIR S. IQBAL, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:12 CV 56 |
| TEJASHKUMAR M. PATEL, WARREN JOHNSON, S-MART PETROLEUM, INC., | ) |
| Defendants. | ) |
| WARREN JOHNSON, S-MART PETROLEUM, INC., | ) |
| Counter Claimants, | ) |
| v. | ) |
| MIR S. IQBAL, | ) |
| Counter Defendant | ) |

## OPINION AND ORDER

This matter is before the court on defendants Warren Johnson and S-Mart Petroleum Inc.'s motion for summary judgment (DE # 23, renewed by DE # 53) and defendant Tejashkumar M. Patel's motion for summary judgment (DE # 55).

I.  BACKGROUND

Plaintiff Mir Iqbal ("Iqbal") was a partner in S-M-1 Acquisition Corp ("S-M-1").[1]

---

[1] The following facts, which will be construed in the light most favorable to Iqbal, are taken from Warren Johnson and S-Mart Petroleum Inc.'s statement of undisputed facts (DE # 23 at 3) (which Iqbal has incorporated into his own response brief (DE # 36 at 2)), Iqbal's affidavit (DE # 35-1), and the factual allegations in Iqbal's verified

(DE # 23 at 3.) In March of 2007, Iqbal was approached by defendant Warren Johnson ("Johnson"), the president of S-Mart Petroleum ("S-Mart"), and Johnson's real estate broker, S.P. Singh ("Singh"), who recommended that Iqbal purchase a gas station in Lafayette, Indiana ("the gas station"). (DE # 1 at 3.) Through his company, S-M-1, Iqbal purchased the gas station. (*Id.*) S-M-1 then entered into a Motor Fuel Sales Agreement with S-Mart. (*Id.*) In the agreement, S-M-1 agreed to purchase at least 120,000 gallons of motor fuel per month from S-Mart from April 1, 2007, until March 31, 2013. (DE # 23 at 3.) Iqbal and Ali Ahmed ("Ahmed")[2] signed a personal guaranty in connection with the Motor Fuel Sales Agreement. (*Id.* at 4.)

Iqbal, who lived in Illinois at the time that he purchased the gas station, had no intention of running the gas station himself. (DE # 1 at 3.) Around the time that Iqbal purchased the gas station, Johnson and Singh introduced Iqbal to Tejashkumar Patel. (*Id.*) After being introduced, Iqbal and Patel entered into an agreement whereby Patel would have complete operational and financial control over the gas station. (*Id.*) After Patel began running the gas station and the gas station had received gas from S-Mart, S-M-1 failed to pay for the gas as set out in the Motor Fuel Sales Agreement. (DE # 23 at 4.) Johnson allowed Patel to skip gas payments for five consecutive weeks, but Iqbal had no knowledge of this practice until after the five-week period was over. (DE # 1 at

---

complaint (DE # 1). *See Ford v. Wilson*, 90 F.3d 245, 246-47 (facts in verified complaints declared true under the penalty for perjury treated the same as facts in an affidavit).

[2] Ahmed was also a partner in S-M-1. (DE # 23-2 at 1.)

2

4.) At that point, Patel left his position at the gas station, and Johnson stopped delivering the gas. (*Id.*)

By October 1, 2008, the unpaid amount owed on the gas totaled $67,829.58. (DE # 23 at 4.) S-Mart eventually filed suit against S-M-1, Iqbal, and Ahmed in Indiana state court to recover the money it was owed under the Motor Fuels Sales Agreement. (*Id.*) On April 14, 2009, the Tippecanoe Superior Court, located in Indiana, entered summary judgment in favor of S-Mart. (*Id.*; *see also* DE # 23-5.) On October 1, 2009, S-Mart entered into a settlement agreement with Iqbal, S-M-1, and Ahmed to settle the judgment from the Tippecanoe Superior Court. (DE # 23 at 4; *see also* DE # 23-1 at 18–19.) Pursuant to the settlement agreement, Iqbal, M&U, LLC,[3] and SGTC II, Inc.[4] executed a promissory note payable to S-Mart in the amount of $75,000.00. (DE # 23-4 at 5; DE # 23-1 at 18–19.) Additionally, SGTC, II, Inc. entered into a new Motor Fuel Sales Agreement with S-Mart. (DE # 23 at 5; DE # 23-1 at 18-19.)

On August 25, 2009, M&U, LLC purchased the gas station and real estate that S-M-1 had owned.[5] (DE # 23 at 6.) M&U, LLC executed a mortgage in favor of S-Mart on October 1, 2009. (*Id.*) The mortgage granted S-Mart a first mortgage lien on the gas station located at the Lafayette property M&U, LLC had purchased. (*Id.*; DE # 23-2 at

---

[3] Iqbal is the sole member and sole manager of M&U, LLC. (DE # 23 at 6.)

[4] Iqbal is the president and majority shareholder of SGTC II, Inc. (DE # 24 at 2-3.)

[5] This purchase was made through a sheriff's sale. (DE # 23 at 6.) Neither party addresses this issue, but it appears that the gas station and property were foreclosed on by the Bank of Indiana prior to the sheriff's sale. (DE # 23-1 at 34–35.)

37–49.) S-Mart later filed suit against Iqbal, M&U, LLC, and SGTC II, Inc. in Tippecanoe Superior Court to enforce the settlement agreement, collect on the promissory note, foreclose the mortgage, and collect damages for breach of the second Motor Fuel Sales Agreement. (DE # 23 at 7; DE # 23-6 at 1.) On June 28, 2010, the Tippecanoe Superior Court entered summary judgment in favor of S-Mart and against Iqbal, M&U, LLC, and SGTC II, Inc. (DE # 23 at 7.) That summary judgment order included an order of foreclosure on the gas station. (DE # 23-8 at 4.) On October 6, 2010, M&U, LLC filed for bankruptcy. (*Id.* at 8.) On December 1, 2011, the bankruptcy court approved an agreement between M&U, LLC and S-Mart to lift the automatic bankruptcy stay on the gas station. (*Id.*; *see also* DE # 23-11.) On March 7, 2012, a sheriff's sale was held and the gas station was sold to Big Boom, Inc. (DE # 23 at 9.)

In January 2012, Iqbal learned from Singh that defendants Patel and Johnson were doing business together at several other gas stations throughout Indiana. (DE # 35-1.) Up until that point, Iqbal was unaware of this relationship between Johnson and Patel. (*Id.*) Iqbal learned from Singh that Johnson and Patel had been working together with the goal of running Iqbal's gas station into the ground, so Johnson could foreclose on the property. (*Id.*)

After learning this information, Iqbal filed the present suit, alleging Civil RICO violations, fraud, and unjust enrichment. (DE # 1.) In response, defendants Johnson and S-Mart filed a counterclaim and moved for summary judgment on all of Iqbal's claims. (DE ## 8, 23.) Rather than ruling on the defendants' motion, the court dismissed Iqbal's

4

claims and the counterclaim for lack of subject matter jurisdiction, pursuant to the *Rooker-Feldman* doctrine. (DE ## 39, 42, 43.) However, the Seventh Circuit ruled that the *Rooker-Feldman* doctrine did not bar Iqbal's suit and reversed this court's judgment. (DE # 50-1 at 5.)

After the reversal, defendants Johnson and S-Mart renewed their motion for summary judgment on May 16, 2015. (DE # 53.) Defendant Patel filed his own motion for summary judgment on May 26, 2015, in which he joins Johnson and S-Mart's motion. (DE # 55.) Therefore, the arguments made in Johnson and S-Mart's motion serve as the collective arguments of Johnson, S-Mart, and Patel (collectively, "defendants"). The motions have been fully briefed and are ripe for ruling.

## II. ANALYSIS

Defendants argue that Iqbal's claims for relief are barred by the doctrine of *res judicata*. (DE # 24 at 8.) S-Mart previously filed two suits against Iqbal in Tippecanoe Superior Court in Indiana, both of which resulted in final judgments. Defendants contend that Iqbal's current suit is an impermissible attempt to relitigate issues that could have been raised in those earlier actions. (*Id.*)

To determine whether *res judicata* applies, federal courts apply the preclusion law of the state that rendered the judgment. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). Here, the court will apply Indiana law. Specifically, defendants ask the court to apply Indiana's compulsory counterclaim rule: Indiana Trial Rule 13(A). (DE ## 24 at 9; 53 at 2; 56 at 2.) Trial Rule 13(A) states:

5

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Defendants assert that Iqbal's current claims involve the same transactions or occurrences that were the subject of the state court actions, and therefore, to preserve his claims for RICO, fraud, and unjust enrichment, Iqbal should have stated them as counterclaims in the state court actions. (DE # 24 at 9.) Since he did not, defendants argue his current claims are precluded. (*Id.*)

In its order reversing this court, the Seventh Circuit cited to multiple decisions of the Court of Appeals of Indiana which held that fraud causing nonpayment is a compulsory counterclaim in a debt-collection suit. *Iqbal v. Patel*, 780 F.3d 728, 730–31 (7th Cir. 2015). The Seventh Circuit then asked this court "to decide whether the Supreme Court of Indiana is likely to agree with these decisions." *Id.* at 731. Ultimately, the court need not decide this question because Iqbal concedes that "a fraud counterclaim is compulsory."[6] (DE # 58 at 4.)

---

[6] Although "fraud" is just one of Iqbal's claims, all three claims are based on the same underlying allegations of fraud. (*See* DE ## 1 at 5–8.) Thus, defendants argue that Iqbal's failure to bring a fraud counterclaim means that *res judicata* should apply to all of his claims equally. (DE # 24 at 15); *see Henry v. Farmer City State Bank*, 808 F.2d 1228, 1236 (7th Cir. 1986) ("[P]laintffs' RICO claims are barred by the doctrine of *res judicata* because they failed to raise their fraud claims as a defense in the state court . . . ."). Iqbal does not contest this in his response (*see* DE # 36); rather than assert *res judicata* should not apply to two of his claims, he argues it applies to none, due to a lack of knowledge.

Nevertheless, Iqbal contests the application of *res judicata* and Indiana Trial Rule 13(A) on the grounds that he did not discover the existence of any of his current claims until after the state court litigation had terminated. (DE # 58 at 4.) A plaintiff's lack of knowledge of his or her claims does prevent the application of Trial Rule 13(A), to the extent the ignorance prevents those claims from accruing. Pursuant to Trial Rule 13(A), "claims that had not accrued at the time of the original lawsuit cannot be considered compulsory counterclaims." *Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, Case No. 1:14-cv-01589-TWP-DKL, 2017 WL 1133707, at *8 (S.D. Ind. Mar. 27, 2017). Under Indiana law, "the cause of action of a tort claim accrues . . . when the plaintiff knew, or in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992). Accordingly, Indiana's accrual rule has two components: "the discovery of the injury, as well as its cause." *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1369 (7th Cir. 1995).

While Iqbal was aware of at least some portion of his injury (the loss of his money and his gas station) at the time of the state court actions, none of the parties claim that Iqbal was actually aware of the alleged cause of his injury (Patel and Johnson's alleged fraud) before January 2012. Yet, defendants assert that Iqbal could have been aware, had he exercised ordinary diligence. (DE # 38 at 6–9.) Iqbal disagrees. (DE # 58 at 6.)

This "ordinary diligence" aspect of Indiana's discovery rule requires the court to "consider whether a reasonable person in the position of [the plaintiff], possessing the information [he] did when [he] did, could have discovered through the exercise of ordinary diligence" that Patel's and Johnson's actions were the cause of his injury. *Horn*, 50 F.3d at 1370. "Despite the fact-specific nature of this inquiry, the point at which a cause of action accrues may be determined as a matter of law if the relevant facts are undisputed and they lead to but one conclusion. . . . If the accrual determination turns on the resolution of factual questions, however, summary judgment is inappropriate." *Id*.

In the case at hand, the record does not lead the court to but one conclusion on the issue accrual. Iqbal asserts that he learned of the fraud in January 2012, but presents no facts explaining whether or not a reasonable person could have discovered this earlier through the exercise of ordinary diligence. Similarly defendants present no facts on point other than the conjecture that Iqbal could have discovered these facts earlier by compelling Singh's testimony on the matter before the conclusion of the state actions. (DE # 38 at 8–9.) However, this suggestion alone is not enough to convince the court that a reasonable person possessing the knowledge Iqbal did at the time would have compelled Singh to provide testimony about the relationship between Johnson and Patel. The court finds that an issue of material fact exists regarding diligence and the accrual of the claims.

In *Horn*, the diligence of the plaintiffs was relevant for determining a statute of limitations issue rather than a preclusion issue, but the Seventh Circuit has used similar logic to deny summary judgment in a case involving preclusion. *See Himel v. Cont'l Ill. Nat'l Bank and Trust Co. of Chicago*, 596 F.2d 205, 210 (7th Cir. 1979). In *Himel*, the Seventh Circuit reversed a district court's grant of summary judgment on the basis of *res judicata* where a material fact question had been raised "respecting the knowledge and diligence of plaintiffs regarding the alleged facts on which the present claims rest." *Id*. As the court discussed above, a similar question of fact exists as to Iqbal's knowledge and diligence regarding the alleged fraud of Johnson and Patel. Therefore, summary judgment is not appropriate under the theory of *res judicata*.

The Seventh Circuit also asked this court to decide whether *res judicata* can apply to defendants Patel and Johnson, who were not parties to the prior state court actions. *Iqbal*, 780 F.3d at 730–31. Under Indiana law, compulsory counterclaims are not limited to individuals named in the original complaint. *Ratcliff v. Citizens Bank of W. Ind.*, 768 N.E.2d 964, 969 (Ind. Ct. App. 2002). Instead, "a party is required to file a compulsory counterclaim that arises from the same transaction or occurrence against third parties over whom the court *can acquire jurisdiction*." *Id*. Iqbal does not argue that the state court could not have acquired jurisdiction over Patel and Johnson or that the alleged tortious actions of Patel and Johnson did not arise from the same transactions or occurrences as the state court actions. (*See* DE ## 36, 58.) Accordingly, the court finds that, under Indiana law, Patel and Johnson would receive the benefits of the compulsory-

counterclaim requirement and *res judicata* to the same extent it would apply had they been parties to the state court actions.[7]

In addition to their *res judicata* argument, defendants contend that summary judgment should be granted in their favor under the doctrine of accord and satisfaction. (DE # 24 at 16.) According to defendants, Iqbal entered into an accord with S-Mart—the Settlement Agreement—which was satisfied through performance. (*Id*.) Defendants contend that Iqbal's claims in the present case are barred by this settlement. (*Id*.)

It is true that under the settlement agreement, Iqbal was barred from bringing a Trial Rule 60(B) motion in state court. (DE # 23-1 at 18–19.) However, the settlement agreement does not, on its face, bar any and all future claims. (*See id*.) Although some types of claims may be barred by the doctrine of accord and satisfaction, defendants provide no legal support for their argument that through the accord and satisfaction of the settlement agreement, Iqbal forfeited his rights to bring RICO, fraud, or unjust enrichment claims. (*See* DE # 24 at 16–18.) Therefore, summary judgment is not appropriate under the doctrine of accord and satisfaction.[8]

---

[7] Although neither party provides a decision from the Supreme Court of Indiana which is on point, this court finds it likely that the Supreme Court of Indiana would agree with the decision of the Court of Appeals of Indiana in *Ratcliff*.

[8] Additionally, the court notes that Iqbal's complaint alleges that defendants engaged in a "fraudulent scheme" (DE # 1 at 2) and that the doctrine of accord and satisfaction might not apply in cases where one of the parties engaged in fraud. 1 James Buchwalter, Corpus Juris Secundum § 10 (April 2017 Update) ("An accord and satisfaction is ineffective and voidable if induced by fraud . . . ."). If the settlement agreement was induced by fraud, it would be voidable. *3155 Dev. Way, LLC v. APM Rental Props., LLC*, 52 N.E.3d 854, 858 (Ind. Ct. App. 2016) ("It is the law in [Indiana] that

Since neither *res judicata* nor accord and satisfaction can support summary judgment, the court will deny both motions.

III. **CONCLUSION**

For the foregoing reasons, defendants Warren Johnson and S-Mart Petroleum Inc.'s motion for summary judgment (DE # 23, renewed by DE # 53) is **DENIED** and defendant Tejashkumar M. Patel's motion for summary judgment (DE # 55) is **DENIED**.

                                      **SO ORDERED.**

Date: July 10, 2017

                              s/James T. Moody
                              JUDGE JAMES T. MOODY
                              UNITED STATES DISTRICT COURT

---

contracts induced by fraud . . . are voidable only and may be avoided by the maker."). However, because the court has already found summary judgment is not appropriate based on accord and satisfaction, it need not decide whether Iqbal's allegations of fraud would block the application of the doctrine in this case.